CARL W. McCARTHA, ADMINISTRATOR OF THE ESTATE OF EFFIE MEACHAM McCARTHA, DECEASED, v. COLONIAL ICE COMPANY, AND H. V. JOHNSON AND MARK JOHNSON, PARTNERS, TRADING AS H. V. JOHNSON & SON.

(Filed 19 November, 1941.)

1. **Principal and Agent § 3: Master and Servant § 22b—Acts of agents held done in scope of employment by one principal alone although agents were employed as to other matters by another principal.**

This action was instituted against an ice company and a partnership to recover for wrongful death. Under the terms of the contract between defendants it appeared that a definite portion of the premises of the ice company was leased to the partnership which was engaged in the coal business, that the employees were paid by the partnership for work done around the coal yard, and were paid by the ice company for delivering coal, that the ice company had exclusive right to deliver all coal, which it did in its trucks, but that the partnership maintained one truck for use exclusively in unloading and storing coal on the premises, and that each party agreed not to engage in the business of the other. It appeared that the office manager and an office employee were also paid by both principals and that upon the occasion in suit the office manager directed the use of the partnership's truck in making a delivery of coal to a customer. *Held:* Under the terms of the agreement between the parties, the office manager, in directing the delivery of the coal and the truck driver and his helper in making the delivery, were acting solely in the course of their employment by the ice company, and therefore the ice company was solely liable for the wrongful death resulting from the negligent operation of the truck.

2. **Appeal and Error § 39—**

Two separate concerns had common employees. In this action for wrongful death resulting from the negligent operation of a truck, the sole contention of each of the employers was that the other was solely or primarily liable, negligence in the operation of the truck not being controverted and it being admitted that plaintiff's intestate was without fault. *Held:* Any error on the part of the court in stating that defendant employers admitted that intestate's death was caused by negligence and that she was without fault, and in its instructions that intestate's death was due to the negligence of one or both of the employers, cannot be held prejudicial.

3. **Principal and Agent § 3: Master and Servant § 22b—**

An ice company and a partnership had common employees. The contract between them stipulated that the ice company should make all deliveries of coal sold by the partnership and that the ice company should not be responsible for any loss or damage to the partnership for death or personal injury sustained by the employees or customers of the partnership in the operation of its coal business. Plaintiff's intestate was killed by the negligent operation of a truck while delivering coal. *Held:* The clause exempting the ice company from liability for damage for death or

personal injuries sustained by the partnership's employees or customers in the operation of the coal business is immaterial on the question of the ice company's liability for the wrongful death, since no liability therefor is imposed upon the partnership.

**4. Same—**

Where separate concerns have common employees but the contract between them definitely delineates the business of each and provides that each should pay the employees for work done in the performance of its separate business, each principal is liable for the wrongful acts of the employees in the prosecution of its business and cannot be bound by the acts of the employees while engaged in the business of the other.

**5. Appeal and Error § 39—**

The language in which the court stated its peremptory instructions to the jury, although not in the approved form, *held* not to constitute reversible error under the circumstances of this case.

APPEAL by defendant Colonial Ice Company from *Grady, Emergency Judge,* at May Term, 1941, of GASTON.   No error.

Plaintiff's action was for the recovery of damages for the wrongful death of his intestate, alleged to have been caused by the negligence of the defendants Colonial Ice Company and H. V. Johnson and Mark Johnson, trading as Johnson & Son.   The defendants filed separate answers, each denying the allegations of negligence, and each setting up, as between themselves, pleas of primary and secondary liability, and contribution.

There was evidence on the part of the plaintiff tending to show that the defendant Ice Company was engaged in the manufacture and sale of ice, and that the defendants Johnson & Son were engaged in the business of selling coal in Gastonia, both using the premises owned by the Ice Company, a definite portion of the premises being leased to Johnson & Son; that the operations of these parties with relation to each other were conducted under the terms of a written contract, which was offered in evidence.   This contract, dated 1 July, 1940, provided, among other things, that the Ice Company should "have the exclusive right to deliver, upon the terms hereinafter set out, all such coal as may be sold by Johnson & Son in Gastonia," at a certain price per ton to be paid to the Ice Company by Johnson & Son.   It appeared that the Ice Company owned and operated a number of motor trucks for the purpose of delivering this coal.

It was further provided in the contract: "6. Johnson & Son shall pay Colonial (Ice Company) the actual cost of any and all labor used and other expense incurred in unloading and storing coal on said premises pursuant to the terms of this contract.   For use in the unloading and storing of coal on said premises Johnson & Son shall furnish one motor truck with a driver therefor, but said motor truck shall not be used in

making any delivery of coal from said premises." "13. If it should be found desirable that one or more of Colonial's office employees, including the manager, at its Gastonia plant, assist Johnson & Son in the sale of coal or the keeping of records, Colonial shall designate the person or persons to do such work, and Johnson & Son shall pay Colonial $100 per month, to be applied on the salary or salaries of such person or persons."

Each party agreed not to engage in the business of the other. It was further provided that "Colonial shall in no way be responsible for any loss or damage to Johnson & Son resulting from fire, theft, tornado or other cause, or for death or personal injury which may be sustained by those employees, agents or customers in the operation of said coal business."

There was evidence that A. L. Suddeth, manager, and Mrs. Campbell, office employee of the Ice Company, were the persons designated by the Ice Company to assist Johnson & Son in the sale of coal and keeping records, as provided in the 13th clause of the contract. Suddeth testified that he was manager of the Ice Company, and that he was also designated to manage the coal business of Johnson & Son.

It appeared in evidence that the plaintiff McCartha had ordered two tons of coal to be delivered at his home in Gastonia on 9 August, 1940; that the Ice Company had none of its trucks available for the delivery of this coal at the time; that Suddeth thereupon gave instructions for the use for this purpose of the Johnson motor truck referred to in the contract, and designated two employees to deliver the coal to the plaintiff. These employees, so directed to deliver the coal, had been hired by Suddeth and were paid by Johnson & Son to do work in the coal yard, and were paid by the Ice Company when delivering coal. These two employees loaded the truck and drove to the plaintiff's home for the purpose of delivering the coal. In attempting to do so, the truck was backed into the driveway, which inclined sharply downward toward the rear of the lot, and, as result of negligence on the part of the employees in the use and operation of the truck, the loaded truck plunged backward and struck and killed Mrs. McCartha, the plaintiff's intestate, who was present to direct the placing of the coal. It appeared that the emergency brakes on the truck were defective, though the foot brakes were in order. It was shown that one of the employees on the truck had gotten out to have Mrs. McCartha sign the coal ticket, and the other employee had gotten out for some other purpose just before the truck rolled downward with fatal result.

The defendants offered no evidence.

The following issues were submitted to the jury:

"1. Was the death of Mrs. Effie Meacham McCartha caused by the negligence of the defendants, or either one of them, as alleged in the complaint?

"2. If so, what amount of damages, if any, is the plaintiff entitled to recover of the defendants, or either one of them?

"3. Was the death of Mrs. McCartha due to the joint and concurring negligence of the defendants, Colonial Ice Company, and H. V. Johnson and Mark Johnson, copartners, trading as H. V. Johnson & Son, as alleged in the complaint?

"4. Was the death of Mrs. McCartha due solely to the negligence of the defendant, Colonial Ice Company?

"5. Was the death of Mrs. McCartha due solely to the negligence of the defendants, H. V. Johnson & Son?

"6. Was the negligence of the defendant, Colonial Ice Company, primary, and that of H. V. Johnson secondary?

"7. Was the negligence of the defendants, H. V. Johnson & Son, primary, and that of the Colonial Ice Company secondary?"

The court instructed the jury to answer the 1st issue "Yes," the 3rd issue "No," the 4th issue "Yes," the 5th issue "No," and that the 6th and 7th issues need not be answered. To each of these instructions appellant duly noted exception.

The court charged the jury fully on the second issue, the issue of damages, and stated the evidence relating thereto. Exception was noted to a portion of the charge on this issue.

The jury answered the issues in favor of the plaintiff and against the defendant Colonial Ice Company, and found that the death of plaintiff's intestate was due solely to the negligence of the Ice Company, and not to the negligence of Johnson & Son. The issue of damages was answered in the sum of $10,000.

*Ernest R. Warren and John G. Carpenter for plaintiff, appellee.*

*P. W. Garland and Gover & Covington for defendant, Colonial Ice Company, appellant.*

*Cherry & Hollowell, Stewart & Moore, and J. Laurence Jones for defendant, H. V. Johnson & Son.*

DEVIN, J. The only evidence in the case was that offered by the plaintiff. From this the court below was of the opinion that there was no controversy about the fact that the death of plaintiff's intestate was caused by the negligent operation of the coal laden motor truck, and that the only question was as to who was legally responsible for the operation of the truck, the Colonial Ice Company or Johnson & Son, or both.

The court was also of the opinion that the question of responsibility was to be determined by the terms of the contract between these defendants wherein their relationship to each other and to the transaction was defined. The court was further of the opinion that under the terms of

the contract the defendant Ice Company was given and exercised the exclusive right to deliver all coal sold by Johnson & Son in Gastonia; that while A. L. Suddeth, the manager of the Ice Company, was also manager for Johnson & Son, his duties as representing the latter, as defined and limited by the contract, were to assist Johnson & Son in the sale of coal and in keeping the records; and that in the delivery of coal he represented the Ice Company alone; and that, if, in any view, he could be regarded as the agent of Johnson & Son in attempting to deliver coal by the use of the Johnson truck, he was acting in violation of the express terms of section six of the contract, and thus was outside the scope of any agency or employment by Johnson & Son.   Hence, the court below reached the conclusion that under the uncontradicted evidence the defendant Ice Company was solely responsible for the operations in respect to the delivery of coal to the plaintiff, and liable for the negligence of those employed, at the time, by the Ice Company to make the delivery, and that the unfortunate result was in no way attributable to negligence on the part of Johnson & Son.   In accord with this view the court gave peremptory instructions to the jury upon the appropriate issues submitted relating to the liability of the parties for the wrongful death of plaintiff's intestate.

After careful consideration of the record, we are of opinion that the learned judge who presided over the trial of this cause below has properly interpreted the relationship of the parties to the transaction complained of, and that he has reached the correct conclusion that the death of plaintiff's intestate was due to negligence attributable to the defendant Ice Company, alone.

It is apparent from the terms of the contract between the defendants that the defendant Ice Company was given the exclusive right to deliver the coal sold by Johnson & Son in Gastonia, at a stipulated price per ton. It was constituted an independent contractor and had exclusive control of the manner and method of delivery.   The employees on the coal yard were paid by Johnson & Son for their work on the premises, and by the Ice Company for work in delivering coal.   A part of the salaries of the manager and the clerk was paid by Johnson & Son for assisting in the sale of coal and keeping records, but in all other respects and for all other purposes these were the employees of the Ice Company.   While the truck used on the occasion of the fatal injury to plaintiff's intestate belonged to Johnson & Son, its use was directed by Mr. Suddeth and Mrs. Campbell for the purpose of delivering coal.   The delivery of the coal was a duty which devolved upon them as employees of the Ice Company.   It would seem to follow, therefore, that in directing the use of this truck and in attempting to deliver the coal to the premises of the plaintiff therein, they were acting within the scope of their employment by the

Ice Company, and not as agents for Johnson & Son. Negligence of the employees in the use and operation of the truck on this occasion, for this purpose, proximately causing the death of plaintiff's intestate, was attributable to the Ice Company under the principle of *respondeat superior.*

The appellant noted exception to the following statement by the trial judge in his charge to the jury: "It is admitted, gentlemen—not in the pleadings, but it has been admitted by all counsel in their argument to you—that Mrs. McCartha's death was caused by the negligence of somebody; in other words, that she, herself, was without fault." No objection was made at the time, but later, after the conclusion of the charge, upon his attention being called to this portion of his charge, the judge caused a statement to be entered in the record to the effect that "the only admission made by the defendant Colonial Ice Company or its counsel, either of record or during the trial or in the argument to the jury, was in substance that the death of Mrs. McCartha was due to no fault or negligence on her own part, but was due to the fault of some other person."

However, neither the reference by the judge to what he construed to be admissions in the argument that Mrs. McCartha's death was caused by the negligence of somebody, nor his instructions to the jury that the death of plaintiff's intestate was due to the negligence of one or both of the defendants, can be held prejudicial, since it was admitted that she was without fault, and the negligent operation of the truck was not controverted. The evidence was all one way.

The provision in the contract that the "Colonial (Ice Company) shall in no way be responsible for any loss or damage to Johnson & Son resulting from fire, theft, tornado or other cause, or for death or personal injuries which may be sustained by their employees or customers in the operation of said coal business," is not material to this controversy, since the clause exempts the Ice Company from responsibility to Johnson & Son for loss or damage resulting from the causes enumerated, and no loss or damage has been suffered by, nor has any liability been imposed, upon Johnson & Son. This clause alone may not be held to exempt the Ice Company from liability for a tort causing injury to a third person, for which it alone was liable, or to impose liability, primary or secondary, upon Johnson & Son therefor.

It appears here, as not infrequently happens, that the same persons were agents of, and paid by, two different principals. This sometimes causes confusion where circumstances arise which produce conflicting loyalties. But here the line is clearly marked. The duties and authority of the agents and the consequent liability of the two principals for their acts are defined by a written contract which all parties agree was in force at the time and applicable to the circumstances out of which plaintiff's action arose. The agents acted severally for each principal.

There was no conflict. It is a sound principle in the law of agency that where an agent by an agreement of all parties is employed by two principals and acts severally for each he cannot bind one principal in the separate business of the other.

The exception to the charge of the court on the issue of damages cannot be sustained. The charge seems to have stated the rule for the admeasurement of damages for wrongful death in substantial accord with the established precedents.

While the trial judge did not state his peremptory instructions to the jury, consequent upon his expressed opinion of the law applicable to the facts of the case, in the form approved by this Court, this may not, under the circumstances of this case, be held for error requiring a new trial. The distinction is pointed out in McIntosh Prac. & Proc., 632. Since the trial judge was correct in his view of the law, the manner in which he expressed it, while not approved, would not warrant that the case be remanded merely for the restatement of substantially the same instructions in different language.

The appellant's assignments of error relating to the submission of issues, and to the rulings of the court on the admission of testimony are without substantial merit. No prejudicial effect upon the result is apparent.

We conclude that in the trial there was

No error.