JOSEPH H. WARD, ADMINISTRATOR OF THE ESTATE OF JOSEPH ANTHONY WARD, DECEASED v. THOMPSON HEIGHTS SWIMMING CLUB, INC.

No. 7515SC359

(Filed 15 October 1975)

1. **Electricity § 4— National Electrical Code — violation as negligence per se**

    Violation of the National Electrical Code by defendant in its pump house was negligence per se.

2. **Principal and Agent § 8— unsafe electrical conditions — notice to agent as notice to principal**

    A principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends, although the agent does not in fact inform his principal thereof; therefore, defendant had notice of the unsafe electrical conditions existing in its pump house where an employee of Oakley Electric, upon returning the motor from defendant's pump house after repairing it, told a lifeguard employee of defendant about the conditions.

3. **Negligence § 29— electrocution — negligence as proximate cause — sufficiency of evidence**

    In an action to recover damages for the wrongful death of plaintiff's intestate, the trial court erred in directing a verdict for the defendant where there was sufficient evidence from which the jury could find that a ground fault occurred in defendant's pump house, and, as a proximate result of defendant's negligence in not complying with the National Electrical Code, this ground fault caused the motor to become lethally energized and to electrocute plaintiff's intestate when he came in contact with the motor.

APPEAL by plaintiff from *Braswell, Judge.* Judgment entered 11 February 1975 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 27 August 1975.

Plaintiff brought suit against defendant to recover damages for the wrongful death of plaintiff's decedent. From an order directing a verdict for the defendant, plaintiff appeals.

The evidence tends to show that the defendant is a non-profit private corporation situated in Mebane, N. C. and engaged in the operation of a private swimming pool. In connection with operation of the swimming pool, defendant maintains an electrically serviced pump house at the southwest corner of the pool. In this pump house on or about 8 June and

9 June 1969 were conditions in violation of the 1968 National Electrical Code.

On 2 June 1969, the motor from defendant's pump house was removed for repairs. Upon returning the motor on 3 June, Carl Edwards, an employee of Oakley Electric, notified Wayne Gardner, employee of defendant, of the unsafe electrical condition existing in the pump house.

On 8 June 1969 plaintiff's intestate, Joseph Anthony Ward, was on the premises of the defendant at the request of pool lifeguard Wayne Gardner as a substitute lifeguard for Gardner. Ward's lifeless body was found at 1:20 p.m. 8 June 1969 in the pump house of defendant's pool. Chlorine was kept in the pump house at that time.

The expert testimony of a doctor tended to show that there were burns on the body of plaintiff's intestate which probably resulted from contact with an electric cord, wire, pipe, or other substance carrying electric charges and that death resulted from electrocution.

Further, five witnesses experienced in the field of electricity testified as to the presence of unsafe electrical conditions in defendant's pump house. Mr. T. C. Moody, a State Electrical Inspector, testified that he was familiar with the 1968 version of the National Electrical Code at the time he examined defendant's pump house on 9 June 1969. During this examination, he observed that the wiring in the pump house was not properly installed according to the National Electrical Code, which was in force and effect in North Carolina at that date.

At the close of the plaintiff's evidence, the court directed a verdict for the defendant, and plaintiff appeals.

*Hemric & Hemric, P.A., and John K. Patterson by H. Clay Hemric, Jr., for plaintiff appellant.*

*Latham, Wood & Cooper, by B. F. Wood, for defendant appellee.*

MARTIN, Judge.

Plaintiff assigns as error the allowance of defendant's motion for directed verdict on plaintiff's claim for damages.

On a motion for a directed verdict by the defendant, the court must consider the evidence in the light most favorable to

the plaintiff, and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. G.S. 1A-1, Rule 50 (a), Rules of Civil Procedure; *Adler v. Insurance Co.*, 280 N.C. 146, 185 S.E. 2d 144 (1971); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971); *Younts v. Insurance Co.*, 281 N.C. 582, 189 S.E. 2d 137 (1972). Applying this test to the case at bar, it appears that the evidence presented was sufficient to go to the jury.

In *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955), the Court noted that the General Assembly can prescribe standards of conduct which have the force and effect of law. In G.S. 143-138, the General Assembly specifically set the standard of care in respect to the installing of the electrical system of a building and the electric wiring of buildings for lighting or for other purposes. The standard set is that the electrical system of a building shall be installed in conformity with the "National Electrical Code." The legislative purpose was to protect life, health and property. It is well settled law in this jurisdiction that when a statute imposes upon a person a specific duty for the protection of others, that a violation of such statute is negligence per se. Of course, to make out a case of actionable negligence the additional essential element of proximate cause is required. *Lutz, supra*. Thus, on 8 June 1969 the National Electrical Code had the force and effect of law in North Carolina and criminal sanctions were provided for its violation.

[1, 2] There is plenary evidence to show that the electrical wiring in defendant's pump house was not properly installed as required by the National Electrical Code. The violations of this Code constituted negligence per se. *Lutz Industries, Inc. v. Dixie Homes Stores, supra; Jenkins v. Electric Co.*, 254 N.C. 553, 119 S.E. 2d 767 (1961). Plaintiff's evidence further tends to show that defendant had constructive notice of the unsafe electrical conditions existing in the pump house as early as 2 June 1969 in that defendant's employee, Wayne Gardner, was told by Carl Edwards that the dangerous electrical situation in the pump house should be corrected. The general rule is that a principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends, although the agent does not in fact inform his principal thereof. *Norburn v. Mackie*, 262

N.C. 16, 136 S.E. 2d 279 (1964). Thus, the notice to Gardner of the dangerous condition constituted notice to the defendant.

We now come to the question as to whether the plaintiff's evidence, considered in the light most favorable to plaintiff and giving him the benefit of every reasonable and legitimate inference to be drawn therefrom, is sufficient to carry the case to the jury that defendant's negligence was a proximate cause of the death of plaintiff's intestate.

[3] A proximate cause of an injury is "a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." *Mattingly v. R. R.*, 253 N.C. 746, 117 S.E. 2d 844 (1961) ; *Jenkins v. Electric Co., supra.* In the present case, Lee Norman, the electrical inspector for Alamance County, testified:

> "No, sir, the condition that existed as to the wiring, would not in and of itself constitute a hazard in my opinion. As to what caused it to be a hazard, if you had a breakdown in the winding of this motor, if it had shorted out to the frame of the motor and this is what creates the hazard. No, sir, that hazard would not have been created if the motor had been properly grounded. In my opinion, it became hazardous when the frame of the motor became energized. If it had become energized, and if it had been properly grounded, it would have been conducted, this is the purpose for it, in case you do have abnormal condition, if this ground is present to take the ground fault off of the motor and not charge it up to where it would be dangerous and hazardous to someone coming in contact with it."

Further, T. C. Moody, a State Electrical Inspector, testified as follows:

> "A ground fault occurs when an energized conductor becomes active, becomes connected with the equipment case, the housing . . . There was no ground wire at Thompson Heights Swimming Club Pool. The ground fau't was right here, almost in the center of this space and about right here (indicating) and in this area (indicating on the diagram) and the lower ground wire here (indicating). There was no ground wire from the switch box to the motor. As

to the function of the ground wire, the ground is a safeguard against current fault or ground fault. The ground line is a ground conductor. The ground conductor causes fault current to go back to the source. As far as safety is concerned, it keeps the motor from remaining hot, drains off the current on the casing of the motor. The ground conductor is most important in places that require equipment to be grounded at that location. The National Electrical Code requires motors run by electric cables to be grounded. I found no ground at Thompson Heights. . . . As to whether I said that a ground fault could be described as a shorting out in the motor, a ground fault is not necessarily a shortage, it might be in a sense. I said shorted out and moved from one location to another. In my opinion, those tests proved to me that that is what occurred on this occasion. As to whether there was a shortage inside the coil, the ground had gone to the case of the motor."

Application of the foregoing definition to the evidentiary material demonstrates that there was sufficient evidence from which the jury could find that a ground fault occurred, and, as a proximate result of defendant's negligence in not complying with the National Electrical Code, this ground fault caused the motor to become lethally energized and electrocuted plaintiff's intestate when he came in contact with the motor.

After careful consideration of the evidence in the light most favorable to plaintiff, and giving him all legitimate inferences to be drawn therefrom, it is our opinion that plaintiff was entitled to have the evidence considered by a jury to determine whether the plaintiff's intestate's death was proximately caused by defendant's negligence.

For the reasons stated, the judgment ordering a directed verdict in favor of defendant is

Reversed.

Judges BRITT and HEDRICK concur.