GLENN A. LAZENBY, JR. AND JEAN G. LAZENBY v. DERWOOD H. GODWIN

No. 8214SC114

(Filed 1 February 1983)

1. Fraud § 8— no ratification and waiver

In an action to recover damages for alleged fraud by defendant in the purchase of plaintiffs' stock in a closely held corporation and his subsequent sale

Lazenby v. Godwin

of the corporation, plaintiffs did not, as a matter of law, ratify defendant's purchase of plaintiffs' stock and his sale of the corporation and thus waive any legal claims relating thereto where there was sufficient evidence to show a confidential relationship which would excuse plaintiffs' failure to discover the extent of the fraud, and where there was sufficient evidence for the jury to find that plaintiffs, after discovering some evidence of fraud, were further misled by defendant and therefore excused from actions which otherwise may have constituted a waiver.

**2. Damages § 2; Interest § 1— damages for fraud—prejudgment interest**

The trial court erred in permitting the jury to award prejudgment interest on compensatory damages for fraud where the damages were not liquidated and were not readily ascertainable.

**3. Damages § 14; Fraud § 11— punitive damages—evidence competent to negate aggravated wrongdoing**

In an action to recover damages for alleged fraud by defendant in the purchase of plaintiffs' stock in a closely held corporation, the trial court committed prejudicial error in the exclusion of evidence which tended to show that defendant offered to return plaintiffs' stock to them under certain conditions since such evidence was competent to mitigate the reckless, malicious and wanton nature of defendant's conduct and therefore reduce the amount of punitive damages awarded by the jury.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 7 July 1981 in Superior Court, DURHAM County. Heard in the Court of Appeals 17 November 1982.

This civil action was instituted by the plaintiffs to recover $269,367, plus six percent annual interest from 16 March 1973 for alleged fraudulent acts of the defendant when defendant bought plaintiffs' stock in a closely held corporation. The plaintiffs also sought $300,730.08 as punitive damages.

For more details regarding the history of this case see *Lazenby v. Godwin,* 40 N.C. App. 487, 253 S.E. 2d 489 (1979) and *Lazenby v. Godwin,* 49 N.C. App. 300, 271 S.E. 2d 69 (1980).

At the second trial held on 5 May 1981, the parties offered evidence tending to show the following. In 1972 the plaintiffs and defendant owned shares of stock in Fayetteville Wholesale Building Supply, Inc., a corporation held closely by members of the Godwin family to which both parties belong. In February 1973 the defendant, through a purchase of stock from his brother, Larry Godwin, acquired a controlling interest in Fayetteville Wholesale. Soon thereafter the defendant notified the plaintiffs

and other shareholders that he would buy their remaining shares. However, he did not mention at that time his negotiations with Valley Forge Corporation to sell Fayetteville Wholesale. Plaintiffs agreed to sell their shares in Fayetteville Wholesale to the defendant and the defendant gave the plaintiffs a note of $120,000 with seven percent annual interest in payment for their shares.

Two weeks after this transaction the plaintiffs learned from another family member and shareholder that the defendant had sold Fayetteville Wholesale for $2.6 million to Valley Forge Corporation. Plaintiff Glenn Lazenby immediately contacted the defendant and was informed that a sale had been made. During the ensuing telephone discussion, the defendant convinced the plaintiff, Glenn Lazenby, that the plaintiffs had received a fair settlement for their stock. On 1 January 1974 the plaintiffs received information that the stock they sold for $120,000 was worth more than $300,000.

The following issues were submitted to and answered by the jury as indicated.

(1) Did Derwood H. Godwin stand in a confidential or fiduciary relationship to Glenn A. Lazenby, Jr., and Jean G. Lazenby at the time he acquired their stock on March 16, 1973?

ANSWER: YES

(2) If so, did Derwood H. Godwin exercise good faith in the purchase of the stock from Glenn A. Lazenby, Jr., and Jean G. Lazenby on March 16, 1973 and was the transaction open, fair and honest?

ANSWER: NO

(3) Did Derwood H. Godwin, by actual fraud and deceit, procure the stock of Glenn A. Lazenby, Jr., and Jean G. Lazenby?

ANSWER: YES

(4) Did the plaintiffs affirm and ratify the sale of their stock to Derwood Godwin as alleged in the Answer?

ANSWER: NO

(5) In what amount, if any, are the plaintiffs entitled to recover of the defendant:

A. For principal?   $180,730.08
B. For interest?   $ 88,557.39

(6) In your discretion, what amount of punitive damages, if any, are the plaintiffs entitled to recover of the defendant?

ANSWER: $150,000.00

From a judgment entered on the verdict, defendant appealed.

*Nye, Mitchell, Jarvis & Bugg, by Jerry L. Jarvis and John E. Bugg for the plaintiffs, appellees.*

*James B. Maxwell and Poyner, Geraghty, Hartsfield & Townsend, by David W. Long and Cecil W. Harrison, Jr. for the defendant, appellant.*

HEDRICK, Judge.

[1] The only question raised on appeal with respect to defendant's liability to plaintiffs relates to the fourth issue. In his brief, defendant states his argument as follows: "It is the position of the defendant that the plaintiffs' own evidence establishes, as a matter of law, that plaintiffs, after being afforded the opportunity to know all the facts surrounding the sale of the assets of Fayetteville Wholesale to Valley Forge Corporation, voluntarily ratified the sale of their stock to defendant and waived any legal claims relating thereto." Defendant argues that after the telephone conversation of 27 March 1973, the plaintiff Glenn Lazenby knew or had an opportunity to know all the material facts relating to defendant's purchase of stock from plaintiffs and the subsequent sale of Fayetteville Wholesale. Defendant argues that through his telephone conversation with Glenn Lazenby the plaintiffs learned that the defendant had failed to disclose the pending sale of Fayetteville Wholesale and that the eventual sale to Valley Forge Corporation had been for $2.6 million and that plaintiffs had also discovered some of the technical details of the sale such as liabilities and notes. Because of plaintiffs' failure to investigate further after gaining this knowledge, and by their acceptance of partial payment by defendant on the sale of their stock, the defendant argues the trial court erred in submitting the fourth issue to the jury, and in denying his motions for a directed verdict and judgment notwithstanding the verdict. However, we find this argument unpersuasive and hold that the plaintiffs did not,

as a matter of law, ratify the defendant's transactions of purchasing plaintiffs' stock and selling Fayetteville Wholesale.

Our Supreme Court has addressed the topic of waiver or ratification in situations involving fraud or deceit.

> In 12 R.C.L. (Fraud and Deceit), part sec. 157, p. 411-12, we find: "One may waive the right to sue for damages for fraud, by conduct inconsistent with an intention to do so. To constitute such a waiver in any case, however, the defrauded party must act with full knowledge of his rights, and of the material facts constituting the fraud. There can be no waiver where he did not know of the fraud, and had no means of discovering it. But knowledge of all the evidence tending to prove the fraud is not necessary. It is sufficient if the material facts which go to make it up are known. A failure sooner to discover the fraud may be excused by the existence of confidential relations between the parties, or by reason of the fact that he was misled by further false representations made by the other party."

*Puckett v. Dyer*, 203 N.C. 684, 693, 167 S.E. 43, 47 (1932). Applying this principle to the facts of this case, we find insufficient support for the defendant's contention that plaintiffs' actions constituted ratification as a matter of law. There are sufficient facts to show a confidential relationship which would excuse a failure to discover the extent of the fraud. Furthermore, the record contains testimony about a telephone call made by plaintiff, Glenn Lazenby, to the defendant the same day Lazenby heard about the sale of Fayetteville Wholesale. Glenn Lazenby testified regarding that telephone conversation:

> He [defendant] said, 'It is not at all like you think it is. What you and Jean are getting out of this with interest, I am paying you, you are going to end up getting just about the same amount per share of stock that I am going to get, so take my word for it. You have known me all of these years, and you have trusted me all of these years, just trust me, and take my word for it.'
>
> We talked on for some while, and I actually hung up sort of sad. I felt bad that he didn't have enough confidence in me to tell me about the situation. I wasn't going to go out and

spill the beans to anybody, but he did convince me that he had a legitimate reason for lying to me, and that the thing that Jean and I were getting a proper and fair settlement for our stock.

Therefore, there was sufficient evidence for the jury to find that the plaintiffs, after discovering some evidence of fraud, were further misled by the defendant and therefore excused from actions which otherwise may have constituted waiver. Thus, the trial court did not err in submitting the fourth issue to the jury, and in denying defendant's motions for directed verdict and judgment notwithstanding the verdict. Therefore, the verdict establishing defendant's liability to plaintiffs represented by issues one through four will not be disturbed.

Defendant's remaining assignments of error relate to the issues on damages.

[2] Defendant contends the trial court erred in submitting to the jury an issue regarding prejudgment interest on the issue of compensatory damage, and in entering judgment awarding interest on the verdict. In breach of contract actions, prejudgment interest may be granted. *See* G.S. § 24-5. *See also, General Metals v. Manufacturing Co.*, 259 N.C. 709, 131 S.E. 2d 360 (1963). Prejudgment interest has also been granted under certain limited circumstances where the amount of a claim is obvious or easily ascertainable from the contract or insurance policy. *Wilkes Computer Services v. Aetna Casualty & Surety Co.*, 59 N.C. App. 26, 295 S.E. 2d 776 (1982). Yet, as a general rule, North Carolina courts do not recognize the granting of prejudgment interest on unliquidated damages. *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590 (1962). Since the damages in the present case were not liquidated, and in our opinion were not readily ascertainable, we hold the trial court erred in allowing the jury to award prejudgment interest in this tort action.

[3] Defendant also assigns as error the trial court's refusal to allow "testimony concerning offers from defendant to plaintiffs allowing them to get back into the corporation as shareholders of the corporation." The defendant argues he was prejudiced because the jury was not permitted to hear evidence which would tend to mitigate the reckless, malicious and wanton nature of his conduct and therefore lessen the amount of punitive damages

awarded by a jury. We agree with the defendant that the evidence was excluded improperly.

Our Supreme Court in *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976), held that punitive damages may be awarded only on the basis of *intentional* wrongdoing and *aggravated* tortious conduct. In an earlier case, *Clouse v. Motors, Inc.*, 17 N.C. App. 669, 195 S.E. 2d 327 (1973), this court also refused to allow punitive damages because the defendant's tortious conduct was not sufficiently aggravated. That case involved misrepresentations about the history of an automobile, but finding no evidence of insult, indignity, malice, oppression or bad motive, this court disallowed punitive damages.

In the case at bar, the defendant presented evidence, outside the hearing of the jury, which tended to show that the defendant offered to return plaintiffs' stock to them under certain conditions on 24 January 1974 and 20 March 1974. Such evidence, if believed by the jury, may tend to mitigate the degree of intent, aggravation and maliciousness involved in defendant's fraud, thereby reducing the amount of punitive damages. Since the whole policy behind punitive damages is to punish *intentional* and *aggravated* wrongdoing, we hold the trial judge committed prejudicial error by excluding evidence which went directly to the degree of intent and aggravation of the defendant's conduct.

The defendant presents other assignments of error pertaining to evidence on the issues of damages, but we find it unnecessary to address each of those arguments individually since they are not likely to occur at any subsequent trial. Because the trial court erred in refusing to admit evidence which may have mitigated the intentional and malicious nature of the defendant's tort, and because, in our opinion, all of the issues involving damages are so intertwined with the degree of intent, we hold the defendant is entitled to a new trial as to all issues of damages. *See Carawan v. Tate*, 304 N.C. 696, 286 S.E. 2d 99 (1982) and *Carawan v. Tate*, 53 N.C. App. 161, 280 S.E. 2d 528 (1981).

The result is: we affirm the judgment imposing liability for fraud, and we remand this case for a new trial on all the issues of damages.

Affirmed in part; new trial on the issue of damages.

Judges WEBB and BECTON concur.