THE CITY OF GREENSBORO, A MUNICIPAL CORPORATION; GREENSBORO POLICE DEPARTMENT; E. S. MELVIN, MAYOR OF THE CITY OF GREENSBORO; GREENSBORO CITY COUNCIL AND ITS MEMBERS; V. M. NUSSBAUM, JR., JIMMIE I. BARBER, MARION FOLLIN III, JOHN W. FORBIS, JOANN BOWIE, AND LOIS M. McMANUS; T. Z. OSBORNE, CITY MANAGER OF GREENSBORO; HEWITT E. LOVELACE, JR., PUBLIC SAFETY DIRECTOR FOR THE CITY OF GREENSBORO; AND WILLIAM E. SWING, CHIEF OF THE GREENSBORO POLICE DEPARTMENT v. RESERVE INSURANCE COMPANY; JOHN INGRAM, ANCILLARY RECEIVER OF RESERVE INSURANCE COMPANY; PHILLIP R. O'CONNOR, DOMICILIARY RECEIVER OF RESERVE INSURANCE COMPANY; NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, AND MIDLAND INSURANCE COMPANY

No. 8310SC1112

(Filed 16 October 1984)

1. Insurance § 149— sufficiency of notice—general agent

Notice of claims against city officials delivered to a general agent with the implied actual authority to accept notice is sufficient to impute notice of the city's liability to the insurance company. Furthermore, there was no conflict of interest and the agent was still acting on behalf of the company, when the agent was also the Executive Director of an Insurance Advisory Commission which gave advice and made recommendations to the city on insurance matters, and when the agent received notice of the claim from the city but did not forward it to the company. G.S. 58-39.4(c).

City of Greensboro v. Reserve Insurance Co.

**2. Appeal and Error § 42; Insurance § 5— incomplete record**

The record did not permit a determination of whether the claims from which the action arose were against public policy and therefore uninsurable because the record did not include the complaint or any pleading from one case, and the complaint in the other case did not reveal whether the plaintiff would proceed on a theory of intentional discrimination or unintentional discrimination based on disparate impact.

**3. Insurance § 149.— liability insurance distinguished from indemnity insurance**

An insurance policy is a policy of liability rather than of indemnity where it provides that the insured parties shall obtain the insurer's consent before incurring any legal fees or settling a claim, and where it also provides that notice of the claim is to be given "as soon as practicable" and that the insurers must pay even when the insured becomes bankrupt or insolvent. G.S. 58-155.48(a)(1).

**4. Insurance § 149— other insurance clauses—second policy suspends first**

Where one public officials liability policy is taken out while another is still in effect, and both policies contain "other insurance" clauses, the issuance of the second policy violates the other insurance clause of the first, and coverage on the first policy is suspended.

**5. Insurance § 149— non-duplication of the coverage—effect of deductible clauses**

Where two public officials liability policies provided concurrent coverage, but one carried a deductible of $1,000 and the other a deductible of $10,000, there is exclusive coverage under the first policy for liability between $1,000 and $10,000, and the non-duplication of coverage statute, G.S. 58-155.52(a), will not prohibit a claim against an insolvent insurer under the first policy for such an amount.

**6. Declaratory Judgment § 4.3; Insurance § 92— non-duplication of recovery statute—declaratory judgment not barred**

The exhaustion requirement of G.S. 58-155.52(a) does not impose a precondition to a declaratory judgment action to have various rights and liabilities of the involved insurers clarified; furthermore, G.S. 58-155.52(a) does not apply to concurrent coverage where the operation of an "other insurance" clause has suspended coverage on the policy of the insolvent insurer. G.S. 1-253.

**7. Insurance § 1; Judgments § 55— prejudgment interest—guaranty association not liable**

A guaranty association is not the legal successor of the insolvent insurer; rather, it is obligated to pay claims only to the extent of covered claims, which shall not include any amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises. The North Carolina Insurance Guaranty Association is a statutory creation that does not have liability for prejudgment interest. G.S. 58-155.48(a)(1).

APPEAL by plaintiffs, defendant North Carolina Insurance Guaranty Association, and defendant Midland Insurance Company

from *Bailey, Judge.* Judgment entered 17 May 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 17 September 1984.

Plaintiffs, the City of Greensboro ("the City") and certain of its officials commenced this declaratory judgment action against Reserve Insurance Company ("Reserve") and Midland Insurance Company ("Midland") to construe policies of public officials liability insurance issued to the plaintiffs. The insolvency of Reserve required the substitution of its receivers as the real parties in interest and the addition of the North Carolina Insurance Guaranty Association ("the Association") as an additional party defendant. The Association is an unincorporated legal entity created by the North Carolina Insurance Guaranty Association Act. G.S. 58-155.41, *et seq.*

The facts are not in dispute and may be summarized as follows: The City originally purchased a public officials liability policy from Reserve. The policy period was from 7 October 1974 to 7 October 1977, and the policy had a deductible amount of $1,000 per loss. In 1976, Reserve gave notice of its intention to cancel the policy effective 1 April 1976. The City thereupon exercised an option it had under the policy to purchase an extension of the insurance, which extension covered claims made against the insured between 1 April 1976 and 1 April 1977, for acts committed before 1 April 1976. Any reference in this opinion to the Reserve policy means the original policy including the extended discovery period.

The City also purchased a public officials liability policy from Midland covering claims made from 1 April 1976 to 1 April 1979. The deductible was $10,000 per loss. Midland also issued a separate excess liability insurance policy to the City for claims made between 1 July 1976 and 1 April 1979, which policy increased the potential per claim liability of Midland. Any reference herein to the Midland policy means the primary policy; any reference to Midland policies means the primary and the excess policies.

The City purchased the Midland policies through the Guilford City/County Insurance Advisory Committee ("the Committee") a six-member committee of independent insurance agents who gave advice and recommendations to the City and Guilford County with respect to insurance policies, and through whom the City or

County purchased their insurance. The Committee collected commissions on the sale of policies and paid the salaries of its employees, none of whom was an employee of the City, from these commissions. Everette Arnold was Executive Director of the Committee.

Two federal lawsuits brought against the City and its officials underlie this action, as they are the subject of claims made against the Reserve and Midland policies. The first is *Johnsie Washington Wilson, Jr., et al. v. William E. Swing, Chief of Police, Greensboro, et al.* (M.D.N.C. No. C-76-227-G) (*"Wilson"*), filed 13 May 1976, a discrimination suit based on allegations of a city employee's wrongful demotion. Since the action was resolved in favor of the defendants in that case, only legal defense costs resulted. The City submitted an interim statement for legal fees in September 1976, which Reserve paid minus the deductible. The remaining legal costs of $7,120.16 were paid by the City on 30 October 1979.

The second case is *Brenda J. Bishop, et al. v. City of Greensboro, et al.* (M.D.N.C. C-78-51-G) (*"Bishop"*), which arose from charges of race and sex discrimination against the City and its police department. Before *Bishop* was filed as a lawsuit, a charge of discrimination was sent to the City on 13 July 1976, which charge was immediately forwarded to Everette Arnold, who in turn forwarded a copy to Reserve on 4 August 1976. He did not notify Midland. Attempts to negotiate a resolution of the charge failed, and on 7 February 1978, the plaintiffs in *Bishop* filed their complaint. Again, the City delivered a copy of the complaint to Mr. Arnold who forwarded it to Reserve. On 8 June 1978, Reserve inquired of the City's attorneys about other insurance coverage for *Bishop*, and at their request Mr. Arnold wrote a letter dated 11 July 1978, informing Midland of the *Bishop* suit. Midland ultimately denied any liability on the *Bishop* claim. Plaintiffs then instituted this action for a declaratory judgment on 4 June 1979.

Judge Robert L. Farmer heard the motions of plaintiffs, the Association, and Midland for summary judgment, and entered an order granting partial summary judgment. This order was finalized as an Order Correcting Order entered 11 March 1983 ("March order"). On 28 March 1983 the declaratory judgment was heard

by Judge James H. Pou Bailey, which resulted in a judgment entered 17 May 1983 ("May order"). Plaintiffs, defendant Association, and defendant Midland all appeal.

*Smith, Moore, Smith, Schell and Hunter, by Martin N. Erwin, and Vance Barron, Jr., for plaintiffs.*

*Moore, Van Allen and Allen, by Arch T. Allen, III, and Joseph W. Eason, for the North Carolina Insurance Guaranty Association.*

*Young, Moore, Henderson & Alvis, P.A., by David P. Sousa, and John E. Aldridge, Jr., for Midland Insurance Company.*

VAUGHN, Chief Judge.

It is plaintiffs' position on this appeal that both the Association, through the Reserve policy, and Midland, are liable on the *Bishop* claim, and that the Association is liable on the *Wilson* claim. Both Midland and the Association deny all liability on either claim. (At the time of the May order, the *Wilson* case had been settled. The *Bishop* case was still pending; however, the City had already spent over $50,000 in legal fees defending *Bishop*.)

In the May 1983 order the rights and obligations of the various parties were decreed to be as follows: (1) that the Reserve policy provides coverage for *Bishop* for events occurring before 1 April 1976, and that the Reserve policy covers the costs of defense in *Wilson*, (2) that the Midland policies provide coverage in *Bishop*, (3) that, as to *Bishop*, plaintiffs may proceed against the Association after exhausting their rights under the Midland policies, (4) that the Association is liable as provided by statute for the costs incurred in *Wilson*, (5) that the Association is subrogated to Reserve's receivers for any amounts it pays, and (6) that plaintiffs may recover prejudgment interest from Midland, but not from the Association.

We have organized this opinion by first treating the various defenses raised by the Association and by Midland and then discussing the effect of G.S. 58-155.52, the nonduplication of recovery statute, and finally discussing prejudgment interest.

I

**[1]** *Midland's late notice defense to the BISHOP claim:* Midland argues that although plaintiffs first received notice of the *Bishop* claim on 13 July 1976, Midland was not notified until it received the 11 July 1978 letter from Everette Arnold, which fell outside the one-year notice period in its policy. The trial court rejected this argument, concluding that Everette Arnold was a general agent of Midland who possessed the express or implied authority to receive notice on behalf of Midland. Therefore, timely notice of *Bishop* sent to Arnold by the City was imputed to Midland. We agree with the trial court.

The evidence shows that in February 1976, Midland requested in writing that Arnold be licensed as its "countersigning agent" in North Carolina. Such a license was issued and kept current. The license, which was signed by Midland's vice-president, specifically designates Arnold a "general agent." Arnold himself testified that he was a general agent for Midland and in that capacity received notice of other claims which he forwarded to Midland. Both the primary and the excess policies issued by Midland are signed by Arnold as "Authorized Representative" of Midland.

We disagree with Midland that this evidence shows that Arnold only possessed the limited authority to countersign policies. We instead conclude that Arnold was appointed a general agent by Midland, and as a general agent, he possessed the implied actual authority to accept notice. *See* G.S. 58-39.4(c) (defining general agent); *Morpul Research Corp. v. Westover Hardware, Inc.*, 263 N.C. 718, 721, 140 S.E. 2d 416, 418 (1965) (agent has implied authority to do things usual and necessary in carrying out his or her duties). The evidence is undisputed that Arnold, the general agent, was notified of the *Bishop* claim and complaint "as soon as practicable," within the meaning of the policy. Such knowledge is imputed to Midland, Arnold's principal. *Ward v. Thompson Heights Swimming Club, Inc.*, 27 N.C. App. 218, 220, 219 S.E. 2d 73, 75 (1975).

Midland further contends that even if Arnold were Midland's agent, he was a dual agent representing two principals, Midland and the Committee, and since notice of the *Bishop* claim was acquired while exclusively representing the interests of the Com-

mittee, such knowledge cannot be chargeable to Midland. *See McCartha v. Ice Co.*, 220 N.C. 367, 17 S.E. 2d 479 (1941). This contention has no merit. Arnold testified he routinely forwarded notice of claims against Midland that he received to that insurer while serving on the Committee.

Midland further argues that in electing not to forward notice to Midland in this instance, Arnold was acting for his and for the City's interests, interests that were adverse to Midland's and because he was pursuing adverse interests, the general rule imputing the agent's knowledge to the principal does not apply. *See Sparks v. Trust Company*, 256 N.C. 478, 124 S.E. 2d 365 (1962). We fail to see how the City's interests and Midland's were in any sense adverse. To have forwarded notice of the claim to Midland would have preserved the City's rights against Midland as well as against Reserve. Arnold's duty to Midland did not therefore conflict with his duty to the insured since both duties were congruent in requiring Arnold to forward notice to the company.

[2] *The Association's public policy defense to the WILSON and BISHOP claims:* The Association maintains that the *Wilson* and *Bishop* claims are uninsurable, asserting that insurance against intentional acts of a discriminatory or unconstitutional nature is against public policy, and such insurance is therefore void. Although any contract of insurance contrary to public policy is invalid and unenforceable, *e.g., Electrova Co. v. Spring Garden Insurance Co.*, 156 N.C. 232, 72 S.E. 306 (1911), we do not reach the merits of this issue. Although we do not believe these claims are uninsurable, it is impossible to determine from the record whether the *Wilson* claim and the *Bishop* claim are founded on acts of a discriminatory or unconstitutional nature. Nowhere in the record does the complaint or any pleading from the *Wilson* case appear. The *Bishop* claim is still pending, and we cannot discern from the attached complaint whether the plaintiffs in *Bishop* will elect to proceed exclusively on a theory of intentional discrimination, *i.e.*, disparate treatment, as opposed to a theory of unintentional discrimination based on disparate impact. *See Solo Cup Co. v. Federal Insurance Co.*, 619 F. 2d 1178 (7th Cir.), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed. 2d 495 (1980).

[3] *The Association's indemnity policy defense to the WILSON and BISHOP claims:* The Association also contends that the plain-

tiffs' claim is not a "covered claim" for which it is obligated because it did not arise within thirty days of the determination of Reserve's insolvency. G.S. 58-155.48(a)(1). The Association alleges that the trial court incorrectly determined that the Reserve policy was an indemnity policy, rather than a liability policy, and the result of this incorrect determination was a conclusion that the Association was liable on both claims pursuant to G.S. 58-155.48(a)(1).

The evidence shows that Reserve was declared insolvent on 29 May 1979. The City paid the balance of the *Wilson* claim in excess of the deductible on 30 October 1979, and on 17 May 1983, the date of Judge Bailey's order, the *Bishop* lawsuit was still pending. The Association argues that because the Reserve policy was an indemnity policy, no claim against Reserve based on either *Bishop* or *Wilson* arose within thirty days of Reserve's insolvency. Plaintiffs contend that the Reserve policy was not an indemnity policy, but a liability policy, and that liability attached as to Reserve on 13 July 1976, the date on which the *Bishop* claim was made, and on 13 May 1976, the date on which the *Wilson* suit was filed. Plaintiffs conclude that since the liability of Reserve as to both claims attached prior to insolvency, both *Wilson* and *Bishop* are "covered claims existing prior to the determination of insolvency," G.S. 58-155.48(a)(1), and that the Association is therefore obligated on them. We agree with plaintiffs.

The fundamental distinction between a policy of indemnity insurance and one of liability involves when the obligation of the insurer to the insured first attaches:

The general distinction between the two kinds of insurance is that if the policy is one against liability, the coverage thereunder attaches when the liability attaches, regardless of actual loss at that time; but if the policy is one of indemnity only, an action against the insurer does not lie until an actual loss in the discharge of the liability is sustained by the insured. . . .

43 Am. Jur. 2d, Insurance, § 12, pp. 770-1 (1982). *Accord*, 6B J. Appleman, *Insurance Law and Practice* § 4261 (Rev. ed. 1979).

The determination of whether a particular policy of insurance is one of indemnity or liability "depends upon the intention of the

parties as evinced by the phraseology of the agreement in the policy." *Boney v. Central Mutual Insurance Company of Chicago*, 213 N.C. 470, 473, 196 S.E. 837, 839 (1938). The *Boney* case identifies some of the factors to be considered in making this determination:

> "Where the policy provides that insured shall immediately notify the company in case of accident or injury, that the company would defend actions growing out of injuries, in the name of insured, and that insured should not settle any claim or incur any expense without the consent of the company, it is generally held to be a policy of indemnity against liability for damages, and is not merely a contract of indemnity against damages."

213 N.C. at 473, 196 S.E. at 839 (quoting *Corpus Juris*).

The insuring clause of Reserve's policy provides that if a claim or claims is made against the insured during the policy period, "the Insurer will indemnify . . . the Insureds . . . for all loss which the said Insureds . . . shall become legally obligated to pay." We note that Reserve's insuring clause is nearly identical to Midland's, whose policy the Association concedes is one of liability insurance. What distinguishes the two policies are their respective provisions relating to the insurer's obligation to defend claims against the insured. While the Midland policy imposes a "right and duty" to defend any suit against an insured, which typically indicates a liability policy, *see Boney, supra*, Reserve's policy contains the following clause:

> The Insureds shall select and retain legal counsel to represent them in the defense and appeal of any claim, suit, action or proceeding covered under this policy, but no fees, costs or expenses shall be incurred or settlements made, without the Insurer's consent, such consent not to be unreasonably withheld.

The Association stresses that this clause does not impose upon the insurer an absolute duty to defend actions against its insured, on the theory such duty is a prerequisite to a policy of liability insurance. However, we feel that requiring Reserve's consent before an insured incurs any legal fees or settles a claim is sufficient participation by that insurer in defense of claims against its insured for the clause to be a factor in favor of liability

insurance. *See Boney, supra.* We have no doubt that if an insured had failed to secure Reserve's consent to defense of a claim against it, that Reserve would have raised such failure as a defense against its own liability. Furthermore, the policy contains other indicia that the policy was intended to be one of liability insurance. *See Blake v. St. Paul Fire and Marine Ins. Co.,* 38 N.C. App. 555, 248 S.E. 2d 388 (1978) (construe policy as whole). Notice of a claim against an insured is to be given to Reserve "as soon as practicable." Reserve is also obligated to pay the liability of the insured even when the insured becomes insolvent or bankrupt and therefore unable to pay.

[4] *The Association's and Midland's "other insurance" clause defense to the BISHOP claim:* Both the Association and Midland deny any liability on the *Bishop* claim by relying on the "other insurance" clauses in their respective policies. They both assign error to the following conclusion of law in the March order:

> The "other insurance" clauses in the Reserve and Midland policies, which purport to exclude liability if there is a claim "which is insured by another valid policy or policies" are mutually conflicting and should be disregarded.

We agree with the Association and with Midland that the "other insurance" clauses, also known as "escape" or "no liability" clauses, *Horace Mann Ins. Co. v. Continental Casualty Co.,* 54 N.C. App. 551, 553, n. 2, 284 S.E. 2d 211, 212 (1981), are at issue here because these policies provide overlapping or concurrent coverage for the *Bishop* claim. (We note, however, the two policies are not completely concurrent. *See* discussion *infra.*) While both Midland and the Association would have us enforce their respective escape clauses, arguing that North Carolina has rejected the doctrine of mutual repugnancy relied upon by the trial court, the plaintiffs maintain that neither provision is effective.

We find that defendant-appellants have correctly stated the law. Our courts have in fact rejected the doctrine of mutual repugnancy where two escape clauses conflict. In *Sugg v. Ins. Co.,* 98 N.C. 143, 3 S.E. 732 (1887), after taking out an initial policy of fire insurance, plaintiff-insured took out additional policies on the same property, forgetting that it was already insured. All of the policies contained escape clauses. Our Supreme Court held that the taking out of each subsequent policy violated the clause in the

original policy prohibiting other insurance, and thus plaintiff could not recover against defendant, the original insurer. *Sugg* was expressly relied on in *Allstate Ins. Co. v. Integon Indemnity Corp.*, 24 N.C. App. 538, 211 S.E. 2d 463 (1975), which case also involved two policies of fire insurance both containing escape clauses taken out by the same policyholder. Although conceding that the doctrine of mutual repugnancy "is not without a sound basis in reason," *id.* at 541, 211 S.E. 2d at 466, this Court stated it was bound by the *Sugg* decision and held that the liability of Integon, the original insurer, was precluded by the existence of the policy subsequently taken out from Allstate. Similarly, in the case of *N. C. Grange Mutual Ins. Co. v. Johnson*, 51 N.C. App. 447, 276 S.E. 2d 469 (1981), this Court held that where the insured had a second hail insurance policy written on his crop, "the coverage on the first policy would be suspended." 51 N.C. App. at 449, 276 S.E. 2d at 470. We note, however, that *Grange* makes no mention of either the *Sugg* or *Integon* decisions, and furthermore, that the single case relied on in *Grange* did not involve a head-on conflict of two "other insurance" clauses.

In the case *sub judice*, Midland's policy was taken out by the City while Reserve's policy was still in effect. Both policies contained "other insurance" clauses. When the Midland policy was issued, the "other insurance" clause in the Reserve policy was violated, and coverage on that policy suspended. We therefore hold that insofar as there was concurrent coverage under the two policies, Midland will be liable on the *Bishop* claim, and the Association will not be liable.

We are cognizant that in rejecting the doctrine of mutual repugnancy in these circumstances, we are at variance with the majority viewpoint, which resolves the issue of liability in these cases by declaring the escape clauses mutually repugnant and prorating the loss between the insurers. *See* 16 *Couch on Insurance* 2d (Rev. ed. 1983) § 62:85, and cases therein cited at n. 19; 8A J. Appleman, *Insurance Law and Practice* § 4910 (Rev. ed. 1981), and cases therein cited at n. 21. Particularly well-written opinions adopting the majority position are found in *State Farm M.A. Ins. Co. v. Employers Com'l U. Ins. Co.*, 35 Colo. App. 406, 535 P. 2d 266 (1975) and *Travelers Indemnity Company v. Chappell*, 246 So. 2d 498 (Miss. 1971). We are also aware that the North Carolina rule seems largely based on a single case decided nearly

a century ago, *Sugg v. Ins. Co.*, discussed *supra*. We are nonetheless constrained to apply the law as it exists.

## II

**[5]** Based on the finding in the March order that the two "other insurance" clauses should be disregarded, in its May order the trial court ruled, *inter alia*, that Midland is liable to the City for the *Bishop* claim, and that after the City exhausts its rights under the Midland policies, the Association is liable to the City on *Bishop* to the extent Reserve's obligation on that claim exceeds $100 and is less than $300,000, the statutorily prescribed limits of G.S. 58-155.48(a)(1). The court further ruled that any amount payable to the Association shall be reduced by the amount of any recovery from Midland. Put otherwise, the trial court made Midland primarily liable and the Association secondarily liable for the *Bishop* claim by relying on G.S. 58-155.52(a), which governs non-duplication of recovery, and reads:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this Article shall be reduced by the amount of any recovery under such insurance policy.

Plaintiffs argue that because this statute applies only to claims that are concurrently covered by both a policy of an insolvent insurer and a policy of a solvent insurer, the trial court failed to make a crucial distinction between the portion of the *Bishop* claim for which the Reserve policy provides exclusive coverage, and that portion which is concurrently covered by the Reserve and the Midland policies. We agree. Both policies cover wrongful acts committed prior to 1 April 1976; only Midland covers acts occurring after 1 April 1976. So there appears to be concurrent coverage by Midland and Reserve *before* 1 April 1976, and exclusive coverage by Midland *after* 1 April 1976. This conclusion, however, ignores the difference between deductibles in the two policies. Because the deductible in the Reserve policy is $1,000, and that in the Midland policy is $10,000, as to the City's liability for wrongful acts of its public officials before 1 April 1976, Midland is not liable until the City's liability has exceeded

$10,000. Therefore, there is exclusive coverage under the Reserve policy for acts committed before 1 April 1976 where the City's liability is between $1,000 and $10,000. We hold that the trial court erred in not allowing plaintiffs to proceed directly against the Association on the *Bishop* claim for those amounts.

[6] We now turn to the question of liability on that portion of the *Bishop* claim which is covered concurrently by the Reserve and Midland policies, namely, for wrongful acts occurring before 1 April 1976 for which the liability of the City is greater than $10,000. As to the concurrent coverage, the trial court ruled in its May order that the exhaustion and offset requirements of G.S. 58-155.52(a) require the City to first exhaust its rights under the Midland policy before proceeding against the Association. This interpretation, however, was based on the incorrect finding in the March order that the two escape clauses were mutually repugnant and to be disregarded. Because our resolution of that issue makes Midland alone liable for that portion of the *Bishop* claim concurrently covered by the Reserve and Midland policies, there is no need to apply G.S. 58-155.52(a) to this case. Therefore, although the trial court correctly concluded that Midland is fully obligated to the City under its policies, since the taking out of the Midland policies violated the "other insurance" clause in the Reserve policy, suspending coverage on the Reserve policy, it was error to conclude that the Association has any liability to the City on the *Bishop* claim insofar as there was concurrent coverage under the Reserve and Midland policies. Our holding on this point obviates any need to discuss the consequences of the varying maximum limits of coverage contained in the policies.

We also reject the Association's contention that that portion of the plaintiffs' action against the Association relating to the *Bishop* claim should have been dismissed on the ground that the exhaustion requirement of G.S. 58-155.52(a) imposes a precondition to suit as well as a precondition to recovery. The Association is a proper party to this action. North Carolina's Declaratory Judgment Act expressly confers on courts the "power to declare rights, status, and other legal relations," G.S. 1-253, as long as there exists an actual controversy between the parties. *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949). Plaintiffs brought this declaratory judgment action to have various rights and liabilities of the involved insurers clarified, which is entirely permissible

under the Act. Furthermore, we note the Association consented to joinder as a party defendant.

### III

[7]  The trial court decreed in its May order that the plaintiffs were entitled to recover prejudgment interest from Midland "at the legal rate for all amounts previously becoming due and owing" under that judgment, but that prejudgment interest was not recoverable from the Association. Plaintiffs excepted to this portion of the judgment, asserting that prejudgment interest should accrue on their claims against the Association from 4 October 1979, the date on which the plaintiffs' motion to add the Association as a party to the present action was served on them.

Although North Carolina allows prejudgment interest to be awarded in a breach of contract action, *see, e.g., Lazenby v. Godwin*, 60 N.C. App. 504, 299 S.E. 2d 288 (1983), whether prejudgment interest may be assessed against an insurance guaranty association where the insolvent insurer might have been liable for it is a question not yet encountered by our courts. The Association argues that this is not technically a breach of contract action, *viz.*, that any liability it has arises from statute, and not from the insurance contract between plaintiffs and Reserve. We agree with the Association that it is the identity of the Association as a statutory creation that relieves it from liability for prejudgment interest. As the Superior Court of Pennsylvania reasoned in a 1980 case, interpreting statutes similar to North Carolina's, a guaranty association is not the legal successor of the insolvent insurer; rather, it is obligated to pay claims only to the extent of covered claims, which shall not include any amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises. *Sands v. Pa. Ins. Guaranty Ass'n.*, 283 Pa. Super. 217, 228, 423 A. 2d 1224, 1229 (1980). *See* G.S. 58-155.48(a) (1). We therefore affirm that portion of the May order which disallowed the recovery of prejudgment interest from the Association.

### IV

We summarize the effect of our decision on the liabilities of the insurers to the plaintiffs:

(1) As to the *Wilson* claim, the Association is liable through the Reserve policy.

(2) As to the *Bishop* claim, the Association is liable through the Reserve policy for that portion of the claim based upon wrongful acts committed before 1 April 1976 where the liability is between $1,000 and $10,000, while

(3) Midland is liable on its policies for that portion of the claim based on wrongful acts committed before 1 April 1976 where the liability is greater than $10,000, and

(4) Midland is also liable on its policies for that portion of the claim based on wrongful acts committed after 1 April 1976.

(5) Midland is liable for prejudgment interest for amounts previously due and owing the plaintiffs; the Association is not liable for prejudgment interest.

Affirmed in part, reversed in part.

Judge WHICHARD concurs.

Judge JOHNSON concurs in the result.