UNITED STATES FIDELITY AND GUARANTY COMPANY v. THE COUNTRY CLUB OF JOHNSTON COUNTY, INCORPORATED

No. COA94-1044

(Filed 5 July 1995)

### 1. Insurance § 895 (NCI4th)— defendant in business of selling alcoholic beverages—no coverage under policy

Defendant, a private, nonprofit corporation which owned and operated a golf course, was in the business of selling alcoholic beverages, since defendant's facilities included a small snack bar and grill where members could obtain bottled or canned beer at

any time by charging it to a membership account; therefore, the commercial general liability coverage of the policy written by plaintiff did not apply where a member consumed alcohol at defendant's premises, had a blood alcohol level of greater than .10%, and subsequently caused an automobile collision which resulted in death and serious injury to occupants of the vehicle which he hit.

**Am Jur 2d, Insurance §§ 703 et seq.**

**2. Insurance §§ 150, 153 (NCI4th)— insured in business of selling alcoholic beverages—exclusionary clause as forfeiture provision—applicability of waiver and estoppel**

In the general liability insurance policy written by plaintiff the clause excluding coverage if defendant were "in the business of selling alcoholic beverages" was a forfeiture provision and therefore subject to the doctrines of waiver and estoppel. Whether waiver or estoppel applied so as to preclude plaintiff from asserting the policy exclusion depended upon whether the independent insurance agent who procured the policy, who was also a member of defendant, was an agent of the insured or the insurer, as his knowledge could be imputed to the party for which he was an agent, and there was a genuine issue of fact as to whether he was the agent of plaintiff, defendant, or both.

**Am Jur 2d, Insurance §§ 1571 et seq.**

**Comment Note.—Doctrine of estoppel or waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly excluded therefrom. 1 ALR3d 1139.**

Appeal by defendant from order entered 17 May 1994 in Wake County Superior Court by Judge E. Lynn Johnson. Heard in the Court of Appeals 25 May 1995.

*Wilson & Iseman, L.L.P., G. Gray Wilson and Elizabeth Horton, for plaintiff-appellee.*

*W. Brian Howell, P.A., by W. Brian Howell, and Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for defendant-appellant.*

**U.S. FIDELITY & GUARANTY CO. v. COUNTRY CLUB OF JOHNSTON COUNTY**

[119 N.C. App. 365 (1995)]

GREENE, Judge.

The Country Club of Johnston County, Incorporated (defendant) appeals from an order entered 17 May 1994, sustaining United States Fidelity and Guaranty Company's (plaintiff) objection to the affidavit of defendant's expert witness and allowing plaintiff's motion for summary judgment in its action for declaratory judgment concerning whether it has any obligation under an insurance policy to afford defendant coverage in a pending lawsuit.

Defendant is a private club open to members and guests only. It is a nonprofit corporation that owns and operates a golf course, and its facilities include a pro shop, a swimming pool, tennis courts, a dining room and supporting kitchen facilities. On 18 October 1991, Stephen Richard Upton, III (Mr. Upton), a member of defendant, consumed several mixed drinks while attending a Friday night dinner preceding a member-member golf tournament held at defendant's facilities. After the dinner, Mr. Upton left the facilities and was operating his vehicle in Smithfield, North Carolina, when he struck another vehicle, killing the driver and seriously injuring her younger brother. Mr. Upton, whose blood alcohol level at the time of the accident was greater than 0.10%, was subsequently indicted, tried and convicted of involuntary manslaughter for which he received an active prison term.

In July 1993, the family of the driver killed in the accident initiated a lawsuit against Mr. Upton and defendant for wrongful death and personal injuries, *Sanders, et al. v. Upton*, 93 CVS 4415 (the *Sanders* lawsuit). On the date of the accident, plaintiff insured defendant under a master insurance policy including commercial general liability coverage which provided in pertinent part:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . .

2. Exclusions.

   This insurance does not apply to: . . .

   c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Plaintiff defended the *Sanders* lawsuit on behalf of defendant under a reservation of rights pending a determination regarding coverage.

On 9 July 1993, plaintiff filed a complaint for a declaratory judgment "relieving plaintiff of any obligation to defend or afford coverage to defendant under the policy at issue in the pending" *Sanders* lawsuit. On 14 September 1993, defendant filed an answer admitting it "contends that it is entitled to a defense and coverage" to the *Sanders* lawsuit. Defendant also asserted estoppel as a defense alleging that although plaintiff was informed of defendant's practices with respect to acquisition and consumption of alcohol on defendant's premises, plaintiff continued coverage "without change, without requested change, and without informing the Defendant of any contended applicability of exclusions from coverage based upon the acquisition and consumption of alcohol on the Defendant's premises," and defendant "with justification, reason and in good faith, acted in reliance upon the continued coverage . . . and did not request, nor receive any request for, changes in coverage, nor receive any notification of the Plaintiff's intended exclusion of coverage." Defendant also asserted that plaintiff waived any exception of risk or exclusion involving the consumption of alcohol on 18 October 1991 because "[s]ubsequent to August, 1991, in further consideration of the continuation of the Policy," plaintiff did not cancel or change the coverage of the Policy.

On 15 December 1993, plaintiff made a motion for summary judgment. At the summary judgment hearing, plaintiff asserted that defendant's claims of waiver and estoppel were "gone"; however, plaintiff argued waiver and estoppel would not apply anyway because "no one ever asked, no one ever requested, no one ever represented, no one ever promised anything with regard to coverage for liquor liability, not the insured, not the agent, and not [defendant]." Furthermore, plaintiff, relying on cases from other jurisdictions,

argued the language in the Policy was unambiguous and "if liquor or alcohol is being served or furnished on the premises that that as a matter of law places the insured, quote, 'in the business.' "

At the summary judgment hearing, defendant, in opposition to the summary judgment motion, submitted the affidavits of Sammy G. Jackson (Mr. Jackson), Jeffrey Pope (Mr. Pope), and Peter M. Foley (Mr. Foley) and the depositions of Cathy Davis (Ms. Davis) and David Grady (Mr. Grady) along with several documents, including correspondence between Ms. Davis and Mr. Grady. Defendant filed an objection to the use of Mr. Foley's affidavit.

Mr. Jackson, President of defendant's Board of Directors in 1990 and 1991, stated in his affidavit that there has never been a full-time bartender employed at the Club although the dining room and kitchen are used by private organizations as well as for Club functions. There is a small bar and snack area, but neither liquor by the drink nor alcoholic beverages on tap are served. The Club does have valid brown-bagging permits, and the physical facilities include members' liquor cabinets adjoining the bar area. Bottled or canned beer can be obtained by members in the snack bar by charging it to a membership account.

Ms. Davis, a commercial underwriter for plaintiff, stated in her deposition that she was involved in renewing defendant's insurance policy in 1989 and for 1990-91. She stated that in 1989, she "understood that [defendant] had a brown bagging license, and that they had parties six times a year and there was no sales . . . and understood [defendant was] building a bar." She reviewed an inspection report of defendant's premises dated 9 September 1989 and performed by Stephen Kaasa, plaintiff's loss representative. The report stated "[a]lcohol is allowed as the club does have a brown bagging license, however, no liquor stocks are kept on the premises. . . . The building contains . . . an area that is currently being renovated into a bar and lounge." Ms. Davis identified a 29 August 1991 recommendation letter she sent to Max Creech Insurance Agency which handled defendant's insurance. The letter provided:

[W]e will be attaching CG 21 50, Amendment Of Liquor Liability Exclusion, onto the renewal. According to an inspection on file, the insured has a brown bagging license, as alcohol is allowed at the club occasionally. We feel it is not the intent of Host Liquor Liability to pick up this exposure. Therefore, if liquor liability is requested, then this needs to be added onto the policy.

On Ms. Davis' file copy of this letter, she handwrote the following:

> I spoke to [Mr.] Grady re: liquor. Insured has a brown bagging license. Guests/members brown bagging approximately 6 times/yr. There is a hired bartender who only serves those w/the bottles they bring in. No Sales - [Mr. Grady] is a member of the club. Doesn't appear to be a large exposure. I am going to delete CG2150.

Ms. Davis stated the handwritten notation was her documentation of a telephone conference with Mr. Grady on 25 September 1991. Mr. Grady is an independent insurance agent with Max Creech Insurance Agency. Ms. Davis called Mr. Grady and "basically what [she] found out was that they only had brown bagging approximately six times a year. They had a hired bartender who serves only those who bring the bottles in. That there were no sales." She told Mr. Grady "to delete the CG-2150, which is an enhancement endorsement to the liquor liability exclusion." Before she talked to Mr. Grady, Ms. Davis thought CG-2150 "needed to be on the policy." She "understood later on that [Mr. Grady] didn't tell [her] the entire truth . . . . [W]e later found out that you can go into the club at any day of the week and get a beer. That was not mentioned to me in my conversation with [Mr. Grady] on September 25, 1991."

Mr. Grady, a member of defendant, stated in his deposition that he is an independent insurance agent with Max Creech Insurance Agency and represents a number of carriers, including plaintiff. He became involved with coverage issues concerning defendant in the fall of 1990. He stated that in his telephone conversation with Ms. Davis concerning liquor liability, she asked him about liquor by the drink, bartenders, and liquor cabinets. He informed her that after the Club had tournaments, alcohol would be served at dinners and other social events after the tournament, "but nothing else was discussed." Although as a member of the Club he was aware that beer could be charged to a member's account at any time, he did not inform Ms. Davis because she did not ask him about beer in their telephone conversation concerning liquor liability. She indicated in their conversation that she was going to delete CG-2150. Mr. Grady "was under the assumption that social host exposure would be covered." Mr. Grady stated he never requested coverage for liquor liability prior to 18 October 1991, and no one from plaintiff ever told him that defendant had liquor liability coverage prior to the accident.

**U.S. FIDELITY & GUARANTY CO. v. COUNTRY CLUB OF JOHNSTON COUNTY**

[119 N.C. App. 365 (1995)]

Although defendant appealed from the trial court's sustaining of plaintiff's objection to the affidavit of Mr. Foley, defendant's expert witness, defendant has failed to make any argument in its brief on this issue; therefore, this assignment of error is deemed abandoned, and we need not address it. N.C. R. App. P. 28(b)(5).

The issues presented are whether (I) defendant, whose members can charge bottled and canned beer to their accounts, is "in the business of . . . selling, serving or furnishing alcoholic beverages"; and (II) the evidence reveals a genuine issue of material fact on the issues of estoppel and waiver.

I

[1] The meaning of language used in an insurance contract is a question of law for the court, *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512, 428 S.E.2d 238, 241 (1993), as is the "construction and application of the policy provisions to the undisputed facts." *Walsh v. National Indem. Co.*, 80 N.C. App. 643, 647, 343 S.E.2d 430, 432 (1986). If the language in an exclusionary clause contained in a policy is ambiguous, the clause is "to be strictly construed in favor of coverage." *State Auto. Mut. Ins. Co. v. Hoyle*, 106 N.C. App. 199, 202, 415 S.E.2d 764, 765, *disc. rev. denied*, 331 N.C. 557, 417 S.E.2d 803 (1992). If such an exclusion is plainly expressed, it is to be construed and enforced as expressed. *Id.*, 415 S.E.2d at 765-66. We agree with the plaintiff that the language in the exclusion at issue in this case is plain and unambiguous. *See Fraternal Order of Eagles v. General Accident Ins. Co.*, 792 P.2d 178, 182-83 (Wash. App.), *disc. rev. denied*, 802 P.2d 127 (1990); *McGriff v. United States Fire Ins. Co.*, 436 N.W.2d 859, 862 (S.D. 1989); *Cormier v. Travelers Ins. Co.*, 618 So. 2d 1185, 1187 (La. Ct. App.), *cert & rev. denied*, 625 So. 2d 174 (1993); *Grain Dealers Mut. Ins. Co. v. Lower*, 979 F.2d 1411, 1415 (10th Cir. 1992); *but see American Legion Post # 49 v. Jefferson Ins. Co. of New York*, 485 A.2d 293, 294 (N.H. 1984); *Newell-Blaise Post No. 443 v. Shelby Mut. Ins. Co.*, 487 N.E.2d 1371, 1373 (Mass. 1986).

Applying the plain language of the exclusion, the question is whether the defendant was, on 18 October 1991, "in the business of . . . selling, serving or furnishing alcoholic beverages." The defendant argues that it was not because it is a nonprofit organization whose primary focus is the operation of a golf course and that the serving of alcoholic beverages is a service to its members which does not generate substantial revenue. We disagree. The "obvious purpose of the phrase 'in the business of' is to describe the nature of the activity

engaged in," *Cormier*, 618 So. 2d at 1187, with the focus being on the actual conduct of the insured with respect to the "selling, serving or furnishing" of the alcoholic beverages. *Fraternal Order*, 792 P.2d at 183. Therefore, if the conduct of "selling, serving or furnishing" alcoholic beverages is a permanent, ongoing operation, the insured is "in the business of . . . selling, serving or furnishing alcoholic beverages." If such conduct is infrequent or occasional, the insured is not "in the business of." Accordingly, it is irrelevant whether the insured is a nonprofit organization or in the business of making a profit. Likewise, it is immaterial whether the income from the sale of alcoholic beverages constitutes a major portion of the insured's revenue or whether the primary purpose of the organization is something other than the sale of alcoholic beverages. *Id.*

In this case, the facts are undisputed as to the operations of defendant, and the question of whether the exclusion applies to defendant is a proper subject for summary judgment. *See Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 690-91, 340 S.E.2d 374, 377, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). The facts show that defendant is a private, nonprofit corporation which owns and operates a golf course. The facilities include a small bar area with a snack bar and grill where members can obtain bottled or canned beer at any time by charging such beer to a membership account. This selling of beer is an ongoing operation rather than an occasional or infrequent event. Defendant, therefore, is "in the business of . . . selling" alcoholic beverages and the policy excludes coverage in this case. Because of our holding, it is unnecessary to decide whether the other events sanctioned by the defendant during the course of the year, i.e., member-member golf party, are alone sufficient to support a conclusion that the defendant was "in the business . . . of selling, serving or furnishing alcoholic beverages." *See Sprangers v. Greatway Ins. Co.*, 514 N.W.2d 1, 9 (Wis. 1994) ("club serving alcoholic beverages only at its annual holiday party would not likely be excluded from coverage").

II

[2] Defendant argues that even if this Court determines that the policy provides it no coverage, summary judgment was nonetheless improper because it has established the defenses of waiver and estoppel as a matter of law.

It is well-settled in North Carolina that the doctrines of waiver and estoppel may be applied to obviate forfeiture provisions in insur-

ance contracts; however, waiver and estoppel "are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Hunter v. Insurance Co.*, 241 N.C. 593, 595, 86 S.E.2d 78, 80 (1955); *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 466, 343 S.E.2d 174, 177 (1986); *Durham v. Cox*, 65 N.C. App. 739, 744, 310 S.E.2d 371, 375 (1984). The question is whether the exclusionary clause in this case is a forfeiture provision and therefore subject to the doctrines of waiver an estoppel or not.

This Court, quoting a South Carolina case, explained the difference between a forfeiture provision which is an "accepted" risk and an "excepted" risk to which estoppel and waiver do not apply:

> The distinction between an accepted risk to be defeated by conditions set forth in the policy and an excepted risk is clear, and it is logical to hold that it takes a new contract to cover an excepted risk. By way of illustration: A. has a plantation on which there are 10 buildings. All are covered by a policy of insurance, but the policy provides that, in case A. shall store certain inflammable materials in any of the houses, then the insurance on that building shall instantly cease. That is an assumed risk, which will be void upon a condition subsequent. B. has a plantation upon which there are 10 buildings; 9 of them are covered by a policy of insurance. Building No. 10 is excluded from the policy. It is entirely logical to hold that it takes a new contract to include insurance on B.'s No. 10, but not on A.'s No. 10.

*Durham*, 65 N.C. App. at 747, 310 S.E.2d at 376 (*quoting Keistler Co. v. Aetna Ins. Co.*, 124 S.C. 32, 117 S.E. 70 (1923)). Relying on this explanation of the difference between an "accepted" risk and an "excepted" risk, this Court determined that a provision of a homeowner's policy under coverage on appurtenant structures which stated "[t]his coverage excludes structures used in whole or part for business purposes," "is analogous to the provision against storage of inflammable materials in the foregoing illustration in that both may be said to enhance a risk already assumed by the insurer." *Id.* "[A] 'business use' of the covered property may properly be considered as a condition subsequent, the occurrence of which renders the assumed risk voidable" so that the doctrines of waiver and estoppel may be applied to deny the insurer's right to avoid liability. *Id.*

In *Pearce*, relied on by plaintiff, the insured purchased a $20,000 life insurance policy and also purchased an accidental death rider

which paid an additional $40,000 if the insured were to be injured or die by accident. The rider excepted from coverage death or injuries resulting under certain circumstances, including "travel or flight in or descent from any species of aircraft if (i) you are a pilot, officer, or other member of the crew of such aircraft while in flight, or (ii) the aircraft is maintained or operated for military or naval purposes." *Pearce*, 316 N.C. at 463, 343 S.E.2d at 176. The Court determined that the doctrines of waiver and estoppel were not available to extend coverage to the insured, an Air Force member, who was accidentally killed in a flight training mission. *Id.* at 466, 343 S.E.2d at 178.

The policy provision in this case is similar to the one in *Durham* rather than the one in *Pearce*. By the terms of the Policy, insurance coverage is provided for bodily injury or property damage "for which any insured may be held liable by reason of" (1) contributing to the intoxication of any person, (2) furnishing alcoholic beverages to an underage person or under the influence of alcohol or (3) any regulation pertaining to the sale, gift or distribution of alcoholic beverages unless the insured is "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." Being "in the business of" is properly considered a condition subsequent, "the occurrence of which renders the assumed risk voidable." *Durham*, 65 N.C. App. at 747, 310 S.E.2d at 376. The doctrines of waiver and estoppel may therefore apply to disallow plaintiff from denying coverage.

A party is estopped when he

by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*Webber v. Webber*, 32 N.C. App. 572, 576, 232 S.E.2d 865, 867 (1977) (*quoting In re Bank v. Winder*, 198 N.C. 18, 20, 150 S.E. 489, 491 (1929)). Under waiver, "an insurer waives a policy provision (which would have allowed avoidance of the policy) if at the time the policy is issued, the insurer has knowledge of existing conditions which would otherwise void the policy under the provision's terms." *In re Appeal by McCrary*, 112 N.C. App. 161, 171, 435 S.E.2d 359, 366 (1993). Whether waiver or estoppel may apply so as to preclude the plaintiff from asserting the policy exclusion depends on whether Mr. Grady was an agent of the insured or the insurer as Mr. Grady's

knowledge can be imputed to the party for which he was an agent. *See City of Greensboro v. Reserve Ins. Co.*, 70 N.C. App. 651, 321 S.E.2d 232 (1984). If Mr. Grady was an agent of the insured, the doctrine of estoppel may apply to disallow plaintiff from denying coverage if Ms. Davis, through her actions or silence when she ought to have spoken, intentionally or through culpable negligence, induced Mr. Grady to believe liquor liability coverage existed, and Mr. Grady rightfully relied on such belief to his, i.e., the defendant's, prejudice. The elements of waiver do not arise if Mr. Grady was an agent for the insured. If Mr. Grady was an agent of the insurer, however, the doctrine of waiver, but not estoppel, may apply because he knew that defendant allowed its members to charge beer to their accounts and that knowledge may be imputed to the plaintiff. If Mr. Grady were an agent of both the insured and the insurer, both estoppel and waiver may apply. *See McCartha v. Ice Co.*, 220 N.C. 367, 17 S.E.2d 479 (1941). In any event, estoppel and waiver do not apply unless the defendant meets its burden of proof on each of the elements of estoppel and waiver.

The evidence before the trial court, however, creates an issue of fact as to whether Mr. Grady was the agent of plaintiff, the insurer, or of defendant, the insured, or both. 16 *John Alan Appleman & Jean Appleman, Insurance Law and Practice* §§ 8721, 8722 (1981). Therefore, there is a genuine issue of material fact with regard to the issues of estoppel and waiver, and summary judgment for plaintiff was improper. For these reasons, the decision of the trial court is

Reversed and remanded.

Judges JOHNSON and MARTIN, JOHN C., concur.