[Cite as *Mustard v. Owners Ins. Co.*, 2014-Ohio-865.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| AMANDA MUSTARD, ET AL., | : | Case No. 13CA3362 |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| OWNERS INSURANCE COMPANY, | : | |
| | : | **RELEASED: 3/5/14** |
| | | |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

Michael J. Rourke and Jonathan R. Stoudt, Rourke & Blumenthal, LLP, and Michael K. Geiser, Cecil & Geiser, LLP, Columbus, Ohio, for appellants.

Shawn M. Blatt and Brandon M. Allen, Freund, Freeze & Arnold, Dayton, Ohio, for appellee.

_____

Harsha, J.

{¶1}     Amanda Mustard, Phillip Whitley and Brayden Whitley, by his parents, (the appellants) filed a complaint against Owners Insurance Company (Owners) for satisfaction of a judgment they obtained against Luther Giffin Post No. 14, American Legion, Inc. (the Post).  The trial court granted summary judgment in favor of Owners based on a clause in the Post's insurance policy that excludes coverage when the insured is "in the business of" selling or serving alcohol.  The appellants argue that the trial court erred because as a nonprofit entity, the Post could not be "in the business of" selling or serving alcoholic beverages.

{¶2}     However, to determine whether the liquor liability exclusion applies, the focus should be on the activity of the insured, rather than its corporate status.  The phrase "in the business of" unambiguously includes the activity of regularly selling liquor

to generate significant revenues.  Because the Post derived significant profits from the systematic sale of alcoholic beverages to its members and their guests, it was in the business of selling or serving alcoholic beverages, regardless of how it used or reported that revenue.  Therefore, the trial court correctly granted summary judgment in Owners' favor.

## I. FACTS

{¶3}    This case arises from an automobile accident between the appellants and Michael Hiles.  Mustard, her former husband, Phillip Whitley, and their minor son, Brayden Whitely, were traveling westbound on U.S. Route 50 in Ross County, Ohio, when Hiles's eastbound vehicle crossed the centerline and struck the appellants' vehicle head on.

{¶4}    Prior to the accident Hiles had been drinking alcohol at the Post and was under the influence of alcohol at the time of the accident.  The appellants filed suit against the Post, Hiles and others for injuries they sustained as a result of the accident.  Subsequently, the appellants and the Post stipulated that the Post was liable under Ohio's dram shop statute and common law negligence for serving alcohol to Hiles while he was noticeably intoxicated.  The parties agreed that the court should award the appellants $500,000 and in exchange, the appellants agreed not to execute their judgment against the Post.  Because the Post had little or no assets from which to collect a judgment, the appellants agreed to seek satisfaction against the Post's insurer, Owners.  The court accepted the stipulation and entered a $500,000 judgment in the appellants' favor.

**{¶5}** Next, the appellants filed a statutory supplemental action against Owners seeking satisfaction of the stipulated judgment against the Post. Owners filed a motion for summary judgment asserting that it was entitled to judgment because the insurance policy issued to the Post excluded liability arising out of the service of alcohol. The appellants responded arguing that the liquor liability exclusion in the Post's policy did not apply because the Post was not "in the business of" serving alcohol as required by the exclusion. The trial court rejected the appellants' argument and entered summary judgment in favor of Owners, finding that although the Post is a nonprofit organization, it was engaged in ongoing commercial alcohol sales and therefore was in "the business of" selling alcohol. The appellants appeal that judgment.

## II. ASSIGNMENT OF ERROR

**{¶6}** The appellants raise one assignment of error for our review:

1. THE TRIAL COURT ERRED IN GRANTING THE CIV.R. 56 MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE OWNERS INSURANCE COMPANY.

## III. LAW AND ANALYSIS

### A. Standard of Review

**{¶7}** We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. "Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Snyder v. Stevens*, 4th Dist. Scioto No. 12CA3465, 2012-Ohio-4120, ¶ 11.

**{¶8}** Under Civ.R. 56(C), summary judgment is appropriate only if "'(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment

as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.'" *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15, quoting *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.

{¶9} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). To meet this burden, the moving party must be able to specifically point to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; Civ.R. 56(C).

{¶10} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." *Dresher* at 293.

B. Is the Post "in the business of" Selling Alcoholic Beverages?

{¶11} Here, both parties admit that there are no genuine issues of material fact that remain and the only dispute is whether Owners was entitled to judgment as a

matter of law, i.e. whether the insurance policy provides coverage for the appellants' judgment. The appellants allege that Owners is obligated to indemnify the Post because the term "in the business of" of selling or serving alcohol in the liquor liability exclusion is ambiguous and therefore should be construed against Owners to mean "an underlying profit motive." And because the Post is a nonprofit entity, the appellants argue it could not be in the business of selling or serving alcoholic beverages.

{¶12} Conversely, Owners urges us to look at the Post's activities rather than its nonprofit status. It argues that the phrase "in the business of" is not ambiguous and "clearly applies to both for-profit and non-profit entities." And because the Post "is a commercial entity that derived regular ongoing income from the sale and distribution of alcohol," it contends the exclusion applies to preclude coverage.

{¶13} An insurance policy is a contract with terms that we normally give their plain and ordinary meaning. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. "'In interpreting an insurance policy, the court's role is to give effect to the intent of the parties to the agreement. In doing so, [w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.'" *Comisford v. Erie Ins. Property Cas. Co.*, 4th Dist. Gallia No. 10CA3, 2011-Ohio-1373, ¶ 33, quoting *Eastley v. Volkman*, 4th Dist. Scioto Nos. 09CA3308, 09CA3309, 2010-Ohio-4771, ¶ 50 (overruled on other grounds). However, if a provision is ambiguous and susceptible to

more than one interpretation, it "must be construed strictly against the insurer and liberally in favor of the insured. * * * This is particularly true when considering provisions that purport to limit or qualify coverage under the policy." *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 11. Moreover, "'an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.'" (Emphasis sic.) *Sharonville* at ¶ 6, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992).

{¶14} Here, the policy issued to the Post consisted of two coverage parts: 1.) "Commercial Property Coverage" and 2.) "Commercial General Liability Coverage." The liquor liability exclusion found in the Commerical General Liability Coverage states:

> This insurance does not apply to:
>
> * * *
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

{¶15} Neither we nor the parties found any Ohio case law analyzing whether an insurance policy excluding coverage to organizations "in the business of" serving alcohol is ambiguous when applied to a nonprofit organization, such as the Post. Thus like the parties, we consider case law from other jurisdictions. In support of their argument that the liquor liability exclusion is ambiguous the appellants cite *Am. Legion*

*Post No. 49 v. Jefferson Ins. Co. of New York*, 125 N.H. 758, 485 A.2d 293 (1984), and

*Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins.*

*Co.*, 396 Mass. 633, 487 N.E.2d 1371 (1986).  In turn, Owners cites a line of cases that

reject *Jefferson* and *Newell-Blais* on the basis that the exclusion is unambiguous when

applied to a nonprofit entity and simply refers to any commercial activity.  *See* ¶ 19 *et*

*seq.*

{¶16}  In *Jefferson*, the court considered whether a liquor liability exclusion in an

insurance policy applied to a nonprofit organization that derived substantial revenue

from the regular sale of alcoholic beverages.  In that case, an American Legion Post

operated a bar that sold alcoholic beverages every day and derived substantial profits

from the sales.  These profits made up the bulk of the Legion's revenue and were used

to meet its operating expenses and fund its civic activities.  The court found that the

term "engaged in the business of" has two common meanings.  It may mean "any

regular activity that occupies one's time and attention with or without direct profit motive,

or it can mean an activity with a direct profit objective."  *Jefferson* at 759-760.  Based on

these two definitions, the court found that the term "in the business of" was ambiguous

and resolved the ambiguity in favor of the insured.  The court determined that it "is the

character of the organization, not the profitability of its liquor sales in a given month or

year, which determines whether or not an exclusionary clause * * * applies."  *Id.* at 760.

And "although the Legion derived substantial revenue from its liquor sales, it d[id] not

have the same kind of direct profit motive that a commercial venture, such as a tavern

or inn, has, where profits provide the personal income for its owners."  *Id.*  Thus, the

court held that the policy exclusion was inapplicable.  *Id.* at 759.

**{¶17}** In *Newell-Blais*, the court also considered whether a liquor liability exclusion applied to a nonprofit veterans organization.  The court determined that "business" is commonly understood to mean "an activity engaged in for the purposes of gain or profit."  *Newell-Blais* at 635-636.  Accordingly, because the VFW was a nonprofit organization, it was not engaged in the "business" of selling or serving alcoholic beverages within the clear meaning of the liquor liability exclusion.  *Id.* at 636.

**{¶18}** We conclude *Jefferson* and *Newell-Blais* reflect a basic misunderstanding of the nature of a nonprofit corporation.  The incorporation of an entity as a nonprofit organization does not have any bearing on whether that organization engages in business practices that generate revenue or net income.  In Ohio a nonprofit corporation is defined as one "that is formed otherwise than for pecuniary gain or profit of, and whose net earnings or any part of them are not distributable to, its members, directors, officers, or other private persons, except that the payment of reasonable compensation for services rendered * * * is not pecuniary gain or profit or distribution of net earnings."  R.C. 1702.01(C).  The very essence of a nonprofit corporation is that there is no structure or capacity equivalent to that of the shareholder, who in a for-profit corporation stands to financially gain from the success of the enterprise.  *See In re Lincoln Ave & Crawford's Home for the Aged, Inc.*, 164 B.R.600, 601 (Bkrtcy S.D.Ohio 1974).  There is no restriction on a nonprofit corporation from conducting business activities to generate net revenue to pay its employees or to promote its public purposes.  In other words, nonprofits engage in various profitable business activities to accomplish their permitted purposes; their corporate status does not act as an ipso facto declaration that the nonprofit cannot be "in the business of" a specified profit oriented activity.

{¶19} We find the majority view represented in the cases cited by Owners more persuasive and agree that to determine whether the liquor liability exclusion applies, the focus should be on the activities of the insured, rather than on its corporate status. *See Grain Dealers Mut. Ins. Co. v. Lower*, 979 F.2d 1411, 1415 (10th Cir.1992) ("[T]he exclusionary language 'in the business of …selling [or] serving alcoholic beverages' . . . unambiguously includes nonprofit organizations with ongoing liquor sales operations"); *Cormier v. Travelers Ins. Co.*, 618 So.2d 1185,1187 (La.App.1993) ("The obvious purpose of the phrase 'in the business of' is to describe the nature of the activity engaged in and has nothing to do with the specific purpose for which the activity is pursued or the nature of the person or entity engaged in the activity"); *Auto Owners (Mut.) Ins. Co. v. Sugar Creek Memorial Post No. 3976*, 123 S.W.3d 183, 189 (Mo.App.2003) ("When determining whether a liquor-related liability is excluded from coverage, the focus of the analysis should be on the activities of the insured and the risks inherent in those activities, rather than on the corporate status of the insured"); *United States Fidelity & Guar. Co. v. County Club of Johnston Cty.*, *Inc.*, 119 N.C.App. 365, 371-372, 458 S.E.2d 734 (1995) ("The 'obvious purpose of the phrase "in the business of" is to describe the nature of the activity engaged in,' with the focus being on the actual conduct of the insured with respect to the 'selling, serving or furnishing' of the alcoholic beverages"); *Sprangers v. Greatway Ins. Co.*, 182 Wis.2d 521, 539, 514 N.W.2d 1 (1994) ("[T]o determine the meaning of 'business,' the relevant inquiry under the policy is the nature of the insured's activities, not the nature or mode of its organizational status").

{¶20} Adopting the rationale of the majority view, we conclude that in this context the phrase "in the business of" is not susceptible to more than one interpretation and plainly excludes coverage for liability arising out of the activity of regularly selling alcoholic beverages for profit. *McGriff v. United States Fire Ins. Co.,* 436 N.W.2d 859, 862 (S.D.1989). Contrary to appellants' assertions and the court's finding in *Jefferson*, just because a word like "business," has more than one dictionary definition does not make it ambiguous in a specific context. *Lechner v. Borough Co.*, 5th Dist. Licking No. 98CA132, 1999 WL 770352, *3 (Sept. 2, 1999); *Sprangers* at 538. Rather, here the obvious purpose of the phrase "in the business of," is to describe the nature of the activity engaged in and has nothing to do with the corporate status of the insured. *See Cormier* at 1187. In our context the phrase "in the business of" unambiguously includes a nonprofit organization when its systematic, ongoing liquor sales generate significant revenues. *See Grain Dealers* at 1415.

{¶21} The Post was licensed to sell alcohol under Ohio law and did so on a daily basis. The Post employed four full-time bartenders, whose wages were subject to federal and state withholdings. It routinely provided alcohol to its members and their guests for a charge and derived profits from these sales. Although the income was used to meet the Post's operating expenses and to accomplish its civil goals, this does not mean that the Post sold alcoholic beverages without a profit motive. To the contrary, the Post admits that the profits realized from the sale of alcoholic beverages funded its other activities. In fact, in 2009 the Post realized $195,110 in gross profits from the sale of beer and liquor. All of these facts support a finding that the Post was in

the business of selling or serving alcoholic beverages, even under the definition argued

for by the appellants, regardless of how the profits were used by the Post.

**{¶22}** The appellants also argue that the trial court erred by finding that the

"contractual liability" exclusion applies in this case because of stipulated judgment.  This

exclusion states:

> This insurance does not apply to:
>                                                   * * *
> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to
> pay damages by reason of the assumption of liability in a contract or
> agreement.

**{¶23}** However, because we have already found that the liquor liability exclusion

applies to exclude coverage for the appellants' claims, this argument is moot and we

decline to address it.  *See* App.R. 12(A)(1)(C).

## IV. CONCLUSION

**{¶24}** The Post unambiguously was "in the business of" selling or serving

alcoholic beverages and was excluded from coverage for the appellants' claims under

the "liquor liability" clause in its insurance policy.  Thus, Owners is not obligated to

indemnify the Post for the stipulated judgment entered against it; the trial court correctly

granted summary judgment in Owners' favor.

JUDGMENT AFFIRMED.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
       William H. Harsha, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**